407 P.2d 791

**CAMELBACK LAND AND INVESTMENT COMPANY, a corporation, Appellant,**

v.

**PHOENIX ENTERTAINMENT CORPORATION and Ralph E. Staggs and Patricia J. Staggs, Appellees.***

**No. 1 CA–CIV 18.**

Court of Appeals of Arizona.

Nov. 17, 1965.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7501. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

Powers & Rehnquist, by James Powers, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by John P. Otto, Phoenix, for appellees.

CORDOVA, Superior Court Judge.

Camelback Land and Investment Company, a corporation, hereinafter called Plaintiff, brought an action by filing a complaint against Phoenix Entertainment Corporation and Ralph E. Staggs and Patricia J. Staggs, the Defendants herein, to recover sums allegedly due the Plaintiff by the Defendants as and for rent due under and by virtue of a written lease to the subject premises, and attached a copy of the lease to the complaint. The subject premises consisted of a restaurant located in Phoenix and known as "The Embers". The basic term of the lease was for a period of five years, but said lease contained a provision giving the Plaintiff the right to terminate the lease before the expiration of the basic term, in the Plaintiff-Lessor's sole and uncontrolled discretion. That provision of the lease provided as follows:

"Tenant acknowledges that Landlord is the owner of substantial property adjoining the leased premises which is presently undeveloped. Landlord desires to assure itself that the advantageous development of such property will not be hindered by the existence of this Lease, believing that the proper development of such property is of greater importance to it than this Lease even though Tenant is operating a successful business on the property and paying to Landlord a good rent on its investment in the property.

"It is therefore understood and agreed that Landlord may terminate this Lease at its election as follows:

A. Landlord may terminate this Lease effective ~~October 31~~, November 30, 1961, if in its sole and uncontrolled discretion Landlord should regard such termination as advisable. Such termination shall be effected by mailing a notice thereof to Tenant by registered or certified mail prior to ~~September 30~~, October 31, 1961."

The lease contained further provisions giving the Plaintiff-Lessor the right to an early termination of the lease under certain conditions set forth in the lease. The rents set forth in the lease were a minimum of $3,333.33 per month or ten percent of the gross receipts of the business, whichever was greater. The individual Defendants Ralph E. Staggs and Patricia J. Staggs were sued as guarantors of the lease by the corporation, having subjected themselves to personal liability under said personal guarantee.

The lease contained a provision respecting the remedies of the Plaintiff-Lessor in the event of the default by the tenant, which provision contained the following, set forth in Paragraph XXV thereof:

"DEFAULT BY TENANT—In the event of any default by Tenant in the performance of any of the obligations herein undertaken by them, and in the event such default is not cured within ten days after written notice thereof by Landlord, then Landlord may exercise any one or more of the following remedies:

"(a) Re-enter the premises and take possession thereof, forfeiting the balance of the term, if any, and collect from Tenant the sum of $5,000.00 as agreed upon liquidated damages plus any other actual damages as may have been done to the leased premises.

"(b) If such default arises from a failure by Tenant to pay to third persons any amounts herein required to be paid, Landlord may pay such sums for the account of Tenant, such payments thereafter to constitute a debt due from Tenant to Landlord with interest at 8% per annum together with an amount equal to 25% of the principal as liquidated damages for such breach, the aggregate of which may be col-

lected from Tenant by any means recognized by law for the collection of debts.

"(c) Re-enter the premises and take possession thereof and relet the same for the account of Tenant for the remainder of the YEAR (DJF, RES, PJS), holding the Tenant liable for any deficiency in rent, FOR SAID YEAR ONLY (DJF, RES, PJS). In such event the rental due from Tenant shall be computed as though the gross receipts described in item F (c) of sub-paragraph B of paragraph IX above were in fact received, and Tenant shall be liable for any amount by which 10% of such sums (computed monthly) exceed the actual rent received from such reletting for the balance of said year only."

In the original prepared lease the first sentence of Subparagraph (c) read:

"(c) Re-enter the premises and take possession thereof and relet the same for the account of Tenant for the remainder of the term, holding the Tenant liable for any deficiency in rent."

In the final version of the lease the word "term" was crossed out and the word "year" was inserted by hand, and the words "for said year only" were added at the end, also by hand, and the interlineations and the insertion by hand were then initialled by all of the parties to the lease.

The Defendant-Lessee went into possession on May 2, 1960, and remained in possession until the middle of February, 1961, at which time it ceased its operation of the business known as "The Embers" and moved out of the premises. The Defendant-Lessee then paid the rents due for March 1, 1961, and all but $800.00 of the rent due on April 1, 1961. No further rents were paid thereafter. The first year would expire on April 30, 1961, and the second year would commence with the month of May, 1961.

Subsequently, on May 17, 1961, a complaint was filed by the Plaintiff-Lessor in the nature of a debt to collect the balance of $800.00 due on April 1, the last month of the first year, and to collect the full rental payment allegedly due on May 1, 1961, the first month of the second year.

The Defendant-Lessee on June 2, 1961, filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief could be granted. The Plaintiff-Lessor on June 16, 1961, filed its written Motion for Summary Judgment. The motions were argued before the lower court and taken under advisement. On September 27, 1961, the lower court made the following order:

"This matter having heretofore been taken under advisement, and after due consideration in the premises, therefore,

"IT IS ORDERED that the Defendants' Motion to Dismiss is granted, and Order that the plaintiff's Motion for Summary Judgment is denied and plaintiff take nothing on account thereof.

"The Court has had some difficulty with the issues presented in this matter and has made the foregoing rulings after reading and analyzing the cases presented, one with the other.

"It is the opinion of the Court that a breach of a contract by a tenant is similar to a like breach by the purchaser of a contract of sale and purchase.

"It appears to the Court that the plaintiff, at the time of the execution of the lease, provided therein precisely what the remedy or remedies should be in the case of a purchase [the trial court undoubtedly meant a default]; and therefore, the Court feels that they are, and should be limited in their remedies by the term of the contract."

On October 13, 1961, the final order was made in the lower court as follows:

"ORDER that the Complaint of plaintiff be dismissed with prejudice and that the plaintiff take nothing by virtue thereof in accordance with the written judgment signed this date."

A formal written judgment dismissing the plaintiff's complaint was entered as reflected by the minute entry just quoted.

The Plaintiff-Lessor has appealed the orders and judgment of the trial court granting the Motion to Dismiss for failure to state a claim and further denying Plaintiff's Motion for Summary Judgment, setting forth as assignments of error:

"(1) The court erred in denying plaintiff's motion for summary judgment, in that the record disclosed that there was no genuine issue as to any material fact and plaintiff was entitled to such judgment as a matter of law.

"(2) The court erred in dismissing plaintiff's complaint."

We will first consider Assignment of Error No. 2 relative to whether or not the complaint stated a claim for relief against the Defendants. The Plaintiff-Lessor takes the position that the complaint sets forth a cause of action in the nature of a debt and that the same is not necessarily controlled by the default clause of the lease. Further, that the complaint was less an action for breach of a lease than it was for recovery of a debt; that under the circumstances existing herein between the parties it is questionable whether the default provision of the lease would have any bearing on the issue. In other words, Plaintiff's position is that as each month's rent accrued it became a debt and that the Lessee was obligated to pay the same for the remainder of the term of the lease and at the option of the Lessor, and that Paragraph XXV of the lease setting forth the remedies of the Lessor are inapplicable and immaterial.

It is evident that the Plaintiff's claim for relief is in the nature of a debt and not for breach of the lease by the Defendant-Lessee. The question thus presented in respect to the Motion to Dismiss for failure to state a claim is whether or not the provisions of Paragraph XXV setting forth the rights of the parties in the event of default are exclusive, rendering the ordinary rules of construction of remedies available for a breach of a lease inapplicable.

Paragraph XXV of the lease between the parties contained a provision providing for remedies of the Lessor in the event of default by the Lessee. Subparagraph (a) provided for re-entry by the Lessor and $5,000.-00 agreed liquidated damages. Subparagraph (b) provided that if there was a default by the Tenant-Lessee to pay to third persons any sums required to be paid, that the Landlord could pay the same and charge them to the Lessee as set forth in said subparagraph (b). Subparagraph (c) provided as follows:

"Re-enter the premises and take possession thereof and relet the same for the account of Tenant for the remainder of the year, (DJF, RES, PJS), holding the Tenant liable for any deficiency in rent, FOR SAID YEAR ONLY. (DJF, RES, PJS). In such event the rental due from Tenant shall be computed as though the gross receipts described in item F(c) of sub-paragraph B of paragraph IX above were in fact received, and Tenant shall be liable for any amount by which 10% of such sums (computed monthly) exceed the actual rent received * * *."

It is agreed by both of the parties that subparagraphs (a) and (b) are not applicable to the issues at hand and were not the basis for the complaint or claim for relief against the Defendants. We must therefore now consider whether or not a claim for relief was made under subparagraph (c) of Paragraph XXV.

Plaintiff has set forth some rules of law generally applicable and with which this Court agrees as setting forth general principles of law usually applicable to the usual form of leases. Among those principles are:

(1) That a lessee cannot unilaterally terminate its obligation to pay the agreed rent;

(2) That a landlord is entitled to collect rents accruing prior to the exercise of his right to a re-entry regardless of an intervening breach by the tenant;

■ That the reservation to a landlord of a right to re-enter in the event of a breach is for the benefit of a landlord and need not be exercised at the expense of surrendering his claim for rent.

■ However, certainly the parties to a written lease, such as the one before us now, have the right to contract and change by mutual agreement the usual and ordinary terms of a lease and thereby the usual and ordinary rights of the parties.

■ Ordinarily a lessee has the right to the possession and use of the premises so long as he is not in default of any of the terms of the lease, but such right and legal rule of construction were not a part of the subject lease since it gave the landlord the right to terminate the lease effective October 31, 1961, if in its sole and uncontrolled discretion the landlord should regard such termination as advisable.

■ Further, ordinarily the lessor would have the right to hold the lessee liable for rents due for the balance of the term of the lease, subject to the lessor's duty to attempt to mitigate damages to the credit of the lessee. The lessor's sole discretionary right of early termination and the fact that the lessee was to be liable in the event of any default for the rents for the remainder of the year, not for the remainder of the term, less the amount of rents received by the lessor by reletting the premises, clearly indicates that the parties had changed and modified the usual ordinary provisions of leases, and that they intended to do so and agreed to be bound thereby.

The parties have provided for the remedies available to the lessor in the event of a breach or default by the lessee, and the Arizona Supreme Court has had occasion to pass upon somewhat similar situations in a contract.

In Armstrong v. Irwin, 26 Ariz. 1, 221 P. 222, 32 A.L.R. 609, (1923), the contract between the parties contained the following provisions:

"In the event that the second parties shall default in the payment of any sum of· principal or interest at the times herein mentioned, and such default shall continue for a period of fifteen days· after written notice thereof, then and· in that event the second parties shall lose all rights under this contract and the first parties shall not be obligated either in law or equity to convey said premises to the second parties and the second parties shall forfeit to the first parties all moneys that shall have been paid on account of this contract as liquidated damages and as compensation for the use and occupation of said premises."

In arriving at its conclusion that the remedies set forth in the contract were exclusive and that the appellee could not circumvent the same or seek other remedies such as specific performance, the court stated the following in respect to appellee's position and its decision therein:

"Appellees insist, upon the other hand, that this provision was placed in the contract for the sole benefit of the vendors, and that, in consequence of this fact, they have the right, in case of default in the payment of any installment of principal or interest, to elect whether they will waive the conditions of forfeiture, treat the contract as still binding, and insist upon performance, or declare it forfeited, retain what has been paid on the purchase price, and retake possession of the property. * * *

"As we view it, this provision clearly and definitely fixes the rights of the parties under the contract in case of default in the payment of an installment of principal or interest, and no alternative is open to either side; and to hold that the vendors, in such event, may elect to recover the installments due, and thus compel specific performance, or retain the amount paid and the land as well, is to fail to give effect to it. Interpreted fairly, and in the light of the entire agreement, this provision can only mean that, in case the vendees

fail to make the payments in accordance with the terms of the contract, they will forfeit what they have paid up to that time as damages and rent, and the vendors will retain this sum as full compensation therefor."

The Lessor contends that a far more important precedent is the subsequent decision of the Supreme Court of the State of Arizona in Treadway v. Western Cotton Oil and Ginning Company, 40 Ariz. 125, 10 P.2d 371 (1932). The Lessor points to and relies upon the following language of the court in the Treadway case:

"* * * [A] provision for an avoidance of a contract in a case of a default by the vendee is effective only at the will of the vendor. * * *

"It is the ordinary rule of law that a provision in a contract for the sale of real estate to the effect that on default it shall be void, and the purchaser's right forfeited, is for the exclusive benefit of the vendor, and he is not bound to terminate it, but may enforce specific performance."

We believe that such is a correct statement of law; however, the Treadway case went further, and the Court stated:

"On the other hand, the parties to a contract may, if they desire, provide therein precisely what the remedy shall be in case of a breach, and if they have so provided, they will be limited in their remedy by the terms of the contract. Armstrong v. Irwin, 26 Ariz. 1, 221 P. 222, 223, 32 A.L.R. 609."

In Green v. Snodgrass, 79 Ariz. 319, 289 P.2d 191 (1955), the plaintiff real estate broker sued to recover commissions allegedly earned in procuring purchasers for defendants' realty. The commissions sued for were for five percent of the sale price, which would have been in the sum of $5,-875.00. However, the agreement provided that if the sellers complied but the purchasers failed to comply with the contract that the down payment would be forfeit-

ed and divided equally between sellers and broker upon purchasers' default.

The purchaser defaulted and stopped payment on the $5,000.00 check which was the down payment and the purchaser subsequently disappeared and could not be located. In construing the agreement the court denied relief to the plaintiff broker for his commission since he was bound by the terms of the contract, that is one-half of the forfeiture, and since there was a stop payment on the deposit and the seller thereby received nothing he was not entitled to recover.

In GREEN, the Court stated,
"We have held that where a contract provides a remedy in event of a breach, the terms of the contract will control."

The Court then went on to say:
"As stated in the Weatherford case, supra, this court is committed to the proposition that where a contract provides what the rights of the parties to the contract shall be in the event of a breach, the court will enforce the contract as written. The plaintiff did not seek recovery of his share of the $5,000 down payment according to the terms of the contract but sought to recover the full amount of the commission based upon 5% of the purchase price of the property listed with him."

The Plaintiff, instead of seeking one of the remedies under the lease, sought to enforce his right in the nature of a debt for accrued rents without complying with the terms of Paragraph XXV of the contract. The very language of the complaint clearly indicates the action was for debt and not for a breach of the lease, and further sets forth and indicates a default by Lessees' failure to pay rent and that said default was prior to the expiration of the first year. The language further clearly indicates that the cause of action was not for the balance of the rents due for the first year only as provided by the lease, but that it was in the nature of a debt and included as a part of the claim for relief, the first month of the second year contrary to the express provi-

sions of the lease. The pertinent language of the complaint is as follows:

"Defendants and each of them have failed to pay any of the rent due on May 1, 1961, in the minimum amount of $3,333.33 and defendant PHOENIX ENTERTAINMENT CORPORATION has paid only $2,533.36 of the rent due on April 1, 1961. Plaintiff has made demand upon the defendants and each of them for the balance of the minimum rent due on April 1, 1961, in the amount of $800.00 and for the minimum rent due on May 1, 1961, in the amount of $3,333.33."

■ This was not the remedy accorded to the Lessor by the terms of the contract in the event of a default by the Lessee. We hold therefore that where a lease provides exclusive remedies to the lessor in the event of a breach by the lessee, the lessor is bound thereby and cannot go outside the terms of the contract and seek remedies or make claims for relief against the lessee other than those provided for in the lease; and that the lessor's claim for relief in the nature of a debt extending into the first month of the second year contrary to the provisions of the lease thereby failed to state a claim for relief and was properly subject to a Motion to Dismiss for failure to state a cause of action.

Since admittedly subparagraphs (a) and (b) of Paragraph XXV of the lease did not apply, the lessor was relegated to its rights under subparagraph (c) of Paragraph XXV of the lease which gave it the right to re-enter the premises upon written notice and to claim the balance of the rents due for that year only.

Since the Plaintiff-Lessor by virtue of its complaint claimed relief in the nature of a debt for past rents due, disregarding its exclusive remedies as set forth in Paragraph XXV, it thereby failed to state a cause of action available to it and the motion of the Defendants to dismiss the complaint for failure to state a claim for relief was properly granted.

■ It is urged by the plaintiff that it was error requiring a reversal of this case for the trial court to deny the plaintiff's motion for summary judgment in its entirety in that the affidavit filed in resistance to the motion for summary judgment stated in part:

"that defendants only owe plaintiff the sum of $800.00 as rent for the balance of the first year of said lease".

This position is not well taken in that a recovery in the sum of $800.00 is not consistent with the theory of the plaintiff's complaint. We express no opinion as to whether or not there may be some other remedy for the recovery of this $800.00 or perhaps whether there has been an election by the plaintiff.

The foregoing opinion of Appellant's Assignment of Error No. 2 makes it unnecessary to further discuss Assignment of Error No. 1, other than to state that the trial court properly denied Plaintiff's Motion for Summary Judgment.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concur.

NOTE: Judge FRANCIS J. DONOFRIO, having requested that he be relieved from consideration of this matter, Judge VAL A. CORDOVA was called to sit in his stead and participate in the determination of this decision.