493 P.2d 122

James Noel CONCANNON et al., Appellants,

v.

Elizabeth A. YEWELL, a widow, Appellee.

No. 2 CA–CIV 1017.

Court of Appeals of Arizona,
Division 2.

Feb. 3, 1972.

Merchant, Lohse & Bloom, by Walter J. Grace, III, Tucson, for appellants.

William K. Richey, Tucson, for appellee.

HOWARD, Judge.

Appellee Elizabeth Yewell instituted this action in superior court against defendants Concannon, appellants herein, and against Polaris International Metals Corp., as an action in forcible detainer. The action included defendant Polaris International only as to possession of certain premises but included defendants Concannon as to possession and as to a claim for rentals alleged to be due and owing. The matter of possession having been settled by stipulation in favor of plaintiff Yewell the action for rent was tried to the court sitting without a jury.

At the trial it was undisputed that defendants Concannon had been in possession of the subject premises from about the middle of 1956 to June 4, 1970, and had never paid any rent. It was also undisputed that a lease, prepared in 1956, had been updated and signed by both Mrs. Yewell and Mr. Concannon in April of 1967. Plaintiff asked for rent covering the entire period of possession, $51,400, and defendants claimed that through her words and actions plaintiff had waived all rent due from 1956 to April of 1969 when she first made demand for same.

The court held that the Statute of Limitations barred recovery from rentals due prior to October 1, 1967, and awarded plaintiff the amount called for under the lease from October 1, 1967, through June 30,

1970, or $5,625, plus attorney's fees in the amount of $1,410.

Defendants appeal claiming that the $5,625 award for rent is excessive as the evidence shows that Mrs. Yewell waived all rent due prior to April 1969, and that the $1,410 award for attorney's fees was improper as no evidence was presented as to the reasonable value of such services, the extent of such services or the amount of time spent by plaintiff's attorney in rendering such services.

The testimony adduced at the trial reveals that Mrs. Yewell and Mrs. Concannon were very close friends even before Mrs. Concannon's marriage. In 1956, after the death of Mrs. Yewell's husband, Mr. and Mrs. Concannon came to Tucson from Texas for the purpose of continuing the development and promotion of the Yewell Dry Concentrating Tables which had been invented by Mrs. Yewell's husband. In conjunction with this undertaking a lease was drawn whereby Mr. Concannon was to lease the subject premises from Mrs. Yewell for a term beginning on July 1, 1956, and ending on June 30, 1960. While it was never established whether this lease was signed in 1956, it was undisputed that Mr. Concannon took possession of the premises in 1956, and also that the lease was updated to cover the period from October 1, 1967, to June 30, 1972, and signed by both Mrs. Yewell and Mr. Concannon in April of 1967. Among other things the lease provided that the rental for the property was to be $125 per month for the first year of said term, $175 per month for the second year of said term, $225 per month for the third year of said term, and $300 per month for the fourth year of said term.

Appellants offered testimony at the trial to the effect that Mrs. Yewell had never made a demand for rent prior to April of 1969; that she had repeatedly indicated that the use of the premises was "her contribution" toward the enterprise; that she indicated that no rent would be due until the venture was a financial success and that she had stated that defendants could use the premises "rent free." Mrs. Yewell testified that she discussed the rental situation with appellants on various occasions; that she indicated to them that she would forego the rent "and not demand it until such time as they could pay;" that she never waived the rent in a sense of canceling it; and that in using the word "contribution" she intended that by foregoing the rent until they could pay she was making a contribution. While it was never established whether she had actually used the word "waive" in discussing the rent, she testified that if she had used that word she used it to mean that it was being waived temporarily and that such meaning was clear and understood by both parties. Mrs. Yewell also testified that she made her demand in 1969 because the enterprise had taken on other aspects not connected with the Yewell Tables and also that it would not have done any good to demand rent prior to that time as defendants would not have been able to pay.

■ It is, of course, true that one party may waive any provision of a contract made for his benefit. The courts of this state have repeatedly held that the essential element in the defense of waiver is the voluntary and intentional relinquishment of a known right. Murphey v. Valenzuela, 95 Ariz. 30, 386 P.2d 78 (1963); Wells-Stewart Constr. Co. v. General Ins. Co., 10 Ariz. App. 590, 461 P.2d 98 (1969). Waiver need not be expressed but may be inferred from conduct and is therefore a question of fact to be determined by the trial court. Albert v. Joralemon, 271 F.2d 236 (9th Cir. 1959); City of Tucson v. Koerber, 82 Ariz. 347, 313 P.2d 411 (1957); Home Owners' Loan Corp. v. Bank of Arizona, 54 Ariz. 146, 94 P.2d 437 (1939).

As has been stated on numerous occasions, appellate courts in Arizona will not disturb the factual findings of the trial court if based on conflicting evidence. Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456 (1945); Kadish v. Phx.-Scotts. Sports Co., 11 Ariz.App. 575, 466 P.2d 794 (1970); Gangadean v. Flori

Inv. Co., 11. Ariz.App. 512, 466 P.2d 63 (1970). Moreover, appellate courts will not substitute their findings of fact for those of the trial court if there is any reasonable evidence to support the trial court's findings. Donahue v. Babbitt, 26 Ariz. 542, 227 P. 995 (1924); Sheeley v. Sheeley, 10 Ariz. App. 318, 458 P.2d 522 (1969).

■ Here, the evidence was conflicting as to whether Mrs. Yewell by actions and words, waived the right to receive the rents due under the contract. Having read the transcript, we are of the opinion that there is sufficient evidence to support the trial court's finding that she did not.

Appellants further contend that the award was excessive in that judgment was given which included rent through the month of June, 1970, when the evidence clearly reveals that appellants vacated the premises on June 4, 1970.

■ The term of the lease entered into by the parties ran from October 1, 1967, through June 30, 1972. Appellants, by virtue of a court order dated June 4, 1970, were given five days to vacate the premises. Ordinarily, where the lessee is being evicted for a breach of the lease, the lessor has the right to hold lessee liable for rents due for the balance of the term of the lease, subject to the lessor's duty to attempt to mitigate damages to the credit of the lessee. Camelback Land & Inv. Co. v. Phoenix Entertainment Corp., 2 Ariz.App. 250, 407 P.2d 791 (1965). The award for rent through June 30, 1970, was, therefore, not excessive.

Appellants also raise the question of the validity of the judgment allowing $1,410 attorney's fees. The complaint contained a claim for reasonable attorney's fees and the contract provided:

"3. (e) in the event it shall be necessary for the lessor to bring any action for the enforcement of any provision or condition hereof or for the eviction of the lessee or for the collection of any sum due hereunder, lessee shall pay and lessor may recover a reasonable attorney's fee."

The answer denied it was necessary for plaintiff to employ an attorney as defendants had offered to surrender the premises and by virtue of the fact that there was no rental due to plaintiff.

The facts before us are very similar to those in Crouch v. Pixler, 83 Ariz. 310, 320 P.2d 943 (1958), wherein our Supreme Court held:

". . . where an action is brought upon a written contract as in the present case, which provides that the defaulting party agrees to pay reasonable attorney's fees without specifying the amount, that it is error for the court to fix the amount of attorney's fees or submit the issue to a jury in the absence of proof determining what is a reasonable fee." 83 Ariz. at 315, 320 P.2d at 946.

■ Here the only evidence concerning attorney's fees was the testimony of the plaintiff to the effect that she had hired her attorney and had agreed to pay him a specific hourly rate for the time expended in her behalf. There was no evidence as to the time he did devote to her cause nor was there evidence as to what would have constituted a reasonable fee for the services rendered. That portion of the judgment awarding plaintiff the sum of $1,410 for attorney's fees is reversed. *See also* Crouch v. Truman, 84 Ariz. 360, 328 P.2d 614 (1958); Crosby v. Smith, 13 Ariz.App. 243, 475 P.2d 728 (1970); Thompson v. Harris, 9 Ariz.App. 341, 452 P.2d 122 (1969); Hammontree v. Kenworthy, 1 Ariz.App. 472, 404 P.2d 816 (1965).

■ Appellee has asked for reasonable attorney's fees on appeal. We are of the opinion that the awarding of attorney's fees on appeal is analogous to the allowing of costs on appeal. As a general rule, where both parties prevail on a material question on appeal, each must bear his own costs. In re Estate of Simmons, 64 Cal.2d 217, 49 Cal.Rptr. 369, 411 P.2d 97 (1966); Goedecke v. Viking Inv. Corp., 70 Wash.2d 504, 424 P.2d 307 (1967); Nagle v. Club Fountainbleu, 17 Utah 2d 125, 405 P.2d 346 (1965). We therefore hold that the par-

ties must bear their own attorneys' fees and costs on appeal.

KRUCKER, C. J., and HATHAWAY, J., concur.